CADY, Justice
(dissenting).
I respectfully dissent. I would conclude the instructional error by the district court in this case does not require a reversal of the conviction and the grant of a new trial. I reach this conclusion because the error that occurred at trial was insignificant and did not result in any prejudice.
It has long been recognized in Iowa and across the nation that trial error does not require a new trial when the error does not result in prejudice. Hammond v. Sioux City & P.R. Co., 49 Iowa 450, 453 (1878); see also 5 C.J.S. Appeal and Error § 965, at 327 (2007) [hereinafter Appeal and Error] (citing the general rule). Error inevitably operates within a trial because a trial operates within the hands of humans. A harmless-error standard of review for claims of trial error means the time and expense of endless retrials can be avoided without jeopardizing the requirement for a fair trial. See Appeal and Error § 965, at 327.
The difficulty in applying the harmless-error review lies in assessing the impact of the error on the verdict. In assessing whether a defendant has been injuriously affected by instructional error, the instruction itself must first be carefully considered. In this case, the district court properly instructed the jury that it must “determine if the defendant is guilty or not guilty” and that they “have nothing to do with punishment” in the event the verdict is guilty. See State v. Piper, 663 N.W.2d 894, 915 (Iowa 2003) (holding an instruction telling the jury it had nothing to do with punishment was properly given). The error occurred, however, when the district court further instructed the jury on the general types of punishment imposed for criminal offenses, including fines, various forms of probation, and imprisonment. This additional information *558 was not only extraneous, it informed the jury of sentencing options that would not actually be available to the sentencing court in the event the jury returned a verdict of guilty on the crime of willful injury. The crime of willful injury is a forcible felony. Iowa Code § 702.11(1) (2005) (including willful injury causing serious injury in list of offenses constituting forcible felonies). Probation is not an available sentencing option for a forcible felony. Id. § 907.3 (excluding deferred judgment, deferred or suspended sentence, and probation from available sentencing options for forcible-felony convictions).
The majority finds prejudice because it was possible the jury used the extraneous information in reaching its verdict.[3] The majority concluded the jury “may have” used the error to shirk its instructed duty to return a verdict of guilty only if convinced beyond a reasonable doubt and based only on the evidence presented at trial. It found the jury could have ignored these instructions and used the extraneous information to return a verdict of guilty under a belief that the district court would not later impose a sentence of imprisonment. Not only does this analysis use unsupported assumptions to create a false syllogism, it ultimately creates an irrefutable prejudice standard based on the existence of error itself. At its core, the majority holds that prejudice exists as long as it is conceivable that the jury could have considered extraneous, erroneous information. This holding is contrary to the very purpose of the harmless-error doctrine as well as our test for assessing the impact of error. See State v. Massey, 275 N.W.2d 436, 439 (Iowa 1979) (stating the prejudice test applicable to trial errors not implicating a constitutional right is premised upon a determination of “whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice”). It is a step back to the nineteenth century Exchequer Rule where retrials of cases “seemed to” come to an end only when “the parties expired.” 7 Wayne R. LaFave, et al., Criminal Procedure § 27.6(a), at 100 (3d ed.2007).
We presume juries follow courts’ instructions. State v. Morrison, 368 N.W.2d 173, 176 (Iowa 1985). Without such a presumption, our jury system would have little meaning or purpose. In truth, this case tests this conviction, and the outcome reveals the presumption is illusory.
Importantly, the district court did not instruct the jury to consider the various types of punishment in reaching its verdict; it only informed the jury of the types of punishment. Thus, this is not a case in which the jury was instructed to do or consider something that was incorrect so that we would presume the jury followed the incorrect directive in reaching its verdict. This is also not a case in which the court gave two conflicting directives so that it would be impossible to know if the correct directive was followed. See State v. Leins, 234 N.W.2d 645, 648-49 (Iowa *559 1975) (reversing conviction when jury instruction included both improper test and proper test for entrapment in same instruction and court could not determine which rule the jury applied). More importantly, this was not an error that gave the jury such damaging information that it could not reasonably be expected to actually disregard it. See State v. Paden, 199 Iowa 383, 386, 202 N.W. 105, 107 (1925) (holding certain evidence proffered and subsequently stricken at trial caused incurable prejudice because “[t]he evidence was toxic in character, and in our judgment it is beyond the realm of human possibility that the mind of the jury was not poisoned by the facts admitted”).
Instead, the instruction only provided extraneous information to the jury, information that is generally known by jurors independent of the instruction by the district court. See State v. Sullivan, 679 N.W.2d 19, 30 (Iowa 2004) (stating prejudice is met only when the improper information unquestionably has a powerful impact on the jury). We have previously acknowledged that jurors not only “know that if they find a defendant guilty, he will be punished,” but “[t]hey also know that the more serious the offense ..., the more severe the punishment.” Piper, 663 N.W.2d at 915. To be practical, as judges should, most jurors understand, right or wrong, that criminal defendants face either probation or incarceration if convicted. Thus, the district court gave the jury information consistent with common, preconceived notions. By analogy, we generally find erroneously admitted evidence to be harmless when the evidence is merely cumulative of other evidence properly admitted. See State v. Hildreth, 582 N.W.2d 167, 170 (Iowa 1998).
Moreover, we examine jury instructions for reversible legal error by considering the instructions as a whole, and “if some part was given improperly, the error is cured if the other instructions properly advise the jury as to the legal principles involved.” Thavenet v. Davis, 589 N.W.2d 233, 237 (Iowa 1999). In this case, instead of instructing the jury to consider the extraneous, incorrect information, the district court immediately followed the extraneous information with a declaration to the jury that it “may neither speculate on what any punishment in this case might be nor let it influence your verdict.” Unlike the predicate informational material provided to the jury on punishment, this portion of the instruction was a specific directive or instruction for the jury to follow, and along with the other instructions given, it properly advised the jury of the legal principles applicable to the case. Consequently, the jury was given extraneous information and immediately told to disregard it.
The question is, therefore, simple. Do we or do we not believe jurors follow instructions? The jurors in this case were unequivocally told to disregard punishment. While it was odd and inconsistent for the district court to pass extraneous information along to the jury and then tell the jury to not consider it, it is just as inconsistent to presume the jury went ahead and considered the information. By analogy, we generally find the erroneous admission of evidence to be harmless when the trial court strikes the evidence from the record and immediately admonishes the jury to disregard the evidence. State v. Johnson, 183 N.W.2d 194, 198 (Iowa 1971). Until now, we have believed jurors follow instructions.
I believe jurors serve the justice system with a deep and abiding allegiance to their duties and responsibilities as instructed by the court. This belief supports our presumption that jurors follow instructions. Moreover, there is nothing about the extraneous information in this case, or any *560 other circumstance of the case, to support a conclusion that a jury would be unable to disregard punishment after being informed of the various types of punishment available in criminal sentencing. The error in this case was harmless. Under the standard applied by the majority, the lack of prejudice becomes irrelevant because error will always result in a new trial.

. Importantly, harmless error is a standard of judicial review that requires judges to decide if error affected the verdict. See O’Neal v. McAninch, 513 U.S. 432, 436, 115 S.Ct. 992, 995, 130 L.Ed.2d 947, 952 (1995) (stating the inquiry made by judges regarding harmless error is whether "the error substantially influenced the jury’s decision”). It does not direct judges to simply be convinced that a party has shown prejudice or has not shown prejudice. Id. at 437, 115 S.Ct. at 995, 130 L.Ed.2d at 952 (citing Roger J. Traynor, The Riddle of Harmless Error 25-26 (1970) [hereinafter Traynor]). Regardless of the assistance provided by counsel on the issue, " ‘it is still the responsibility of the ... court, once it concludes there was error, to determine whether the error affected the judgment.’ ” Id. (quoting Traynor at 26).